IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AARC Properties LLC, *Plaintiff,* v. City of Philadelphia, et al, *Defendants.* | CIVIL ACTION NO. 22-1436 |

**Pappert, J.**                                                                                     June 30, 2025

**MEMORANDUM**

      AARC Properties sued the City of Philadelphia, its Department of Licenses and Inspections[1] and Mangual Demolition, Inc., alleging that they wrongfully demolished a damaged residential structure owned by AARC.  The City moves for summary judgment on all claims against it, and the Court grants the Motion.  AARC's *Monell* claims fail because no reasonable juror could conclude that AARC suffered a violation of its federal rights, nor that the City was the "moving force" behind AARC's alleged injuries.  And AARC's state-law claims fail because the City is immune under the Pennsylvania Political Subdivision Tort Claims Act.

I

      AARC Properties is a Limited Liability Company with three members: Conor Rodgers and his mother and father.  (Rodgers Dep. 12:3–9, ECF No. 29, pp. 0051–88.)  In April of 2019, Rodgers on AARC's behalf submitted the winning bid to purchase the

---

[1]     The Department of Licenses and Inspections is not a separate entity from the City, *see* 53 P.S. § 16257; *Van v. City of Philadelphia*, No. 24-CV-5014, 2024 WL 4494691 (E.D. Pa. Oct. 15, 2024) (collecting cases), so the Court treats only the City as a party.

1

lot located at 3527 North Warnock Street in Philadelphia. (*Id.* 20:3–20, 21:12–23, 24:20–25:2.) AARC obtained the deed to the lot in July of 2019. (*Id.* 26:13–20.)

Prior to AARC's purchase of the lot, the residential structure located thereon had come in violation of the Philadelphia Property Maintenance Code, (April 2, 2019 Notice of Violation, ECF No. 29, pp. 0001–02), apparently because of a fire that started at the neighboring property, *see* (Rodgers Dep. 26:18–27:12.) The Department of Licenses and Inspections (L&I) posted an orange "Notice of Violation Warning" on the front of the structure as early as January 29, 2019. *See* (Photographs, ECF No. 29, pp. 0040–41.) Rodgers spoke with L&I employees about those violations sometime between when it won the bid in April and when it obtained the deed in July. (*Id.* 35:20–36:12.)

Shortly after AARC obtained the deed, L&I gave Rodgers a more fulsome explanation of the property's outstanding violations and told him that AARC would need to retain an engineer and architect and have them draw up a plan to remedy the violations and then submit those plans for approval. (*Id.* 36:21–37:17, 38:7–19.) AARC did not immediately retain anyone. *See* (*Id.* 49:21–50:4, 118:14–120:1.) In October of 2019, L&I sent a notice of violation directly to AARC at its address of record, and Rodgers confirms that he received it. (*Id.* 13:1–4, 64:22–24, 70:18–20, 130:10–23.)[2] The notice identified the same Maintenance Code violations that Rodgers had previously discussed with L&I employees. (*Id.* 36:6–12, 60:15–18); (October 25, 2019 Notice of Violation, ECF No. 29, pp. 0050–51.) It instructed that AARC had to, within thirty

---

[2] L&I apparently sent two violation notices. (Rodgers Dep. 130:10–13.) They were identical in substance, but one was titled "final" notice and the other was titled "initial" notice. (*Id.*) Rodgers says that L&I followed up with him and told him to disregard the one labeled "final," (*id.* 57:12–22), so the one labeled "initial" was the only operative notice. The record contains no further details about the mix-up, and AARC does not rely on it as a basis for its claims.

days, obtain the requisite permits and cure the defects by either repairing the structure or demolishing it.  (October 25, 2019 Notice of Violation.)  And it warned that failure to do so could "result in the City taking action to demolish the structure and to stucco remaining party walls" at AARC's expense.  (*Id.*)  It also explained that AARC had "the right to appeal these violations within five days," (*id.*) which AARC did not do, (Rodgers Dep. 140:18–23).

Though AARC did eventually retain an engineer who in February 2020 put together plans to remedy the Code violations, (Rodgers Dep. 53:20–53:47), AARC never obtained a permit to make the necessary repairs to the property, (*id.* 55:8–56:23).  Thus, in March of 2020, the City contracted with Mangual Demolition to demolish the structure on AARC's property.  *See* (Permit, ECF No. 30-1 at 16); (Rodgers Dep. 84:13–85:20.)

## II

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016).  If the movant meets this initial burden, "the burden shifts to the nonmoving

3

party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). At the summary judgment stage, the Court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the Court must construe the facts in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001).[3]

III

Counts III and IV[4] of AARC's Complaint assert claims against the City pursuant to 42 U.S.C. § 1983. Pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), a plaintiff must show that its federal rights were violated, and that the municipality was the "moving force" behind the violation. *Hightower v. City of Philadelphia*, 130 F.4th 352, 355–56 (3d Cir. 2025) (quoting *Monell*, 436 U.S. at 691). A plaintiff may satisfy the "moving force" requirement in one of two ways. First, the plaintiff can show that its injuries were proximately caused by an "unconstitutional policy or custom of the municipality." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citation omitted). A policy is "an official proclamation, policy or edict," and a custom is a "course of conduct

---

[3] AARC failed to respond to the City's concise statement of material facts as required by § II.D.5 of the Court's Policies and Procedures, so the Court could treat AARC's statement of material facts as uncontroverted. Fed. R. Civ. P. 56(e). The Court nevertheless has reviewed each party's record submissions.

[4] Count VII of the complaint is entitled "civil rights" and appears duplicative of both the due process counts, so the Court does not treat it separately.

4

so well-settled and permanent as to virtually constitute law." *Id.* at 105–06.  Second, a plaintiff may show that its injuries were caused by a "failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Id.* at 105.  A plaintiff taking the failure-or-inadequacy route must show that (1) policymakers know employees will "confront a particular situation" (2) involving "a difficult choice or a history of . . . mishandling" and (3) the wrong choice will frequently cause a deprivation of rights.  *Id.* at 106.

A

AARC first claims that the City violated AARC's right to procedural due process. (Compl. Count III,)  so it must show that (1) the City deprived it of life, liberty or property (2) without "due process of law." *Thompson v. State of Delaware Dep't of Servs. for Child., Youth & Their Fams.*, 44 F.4th 188, 194 (3d Cir. 2022).  Only the second element — whether the City afforded AARC adequate process — is at issue. The fundamental procedural protections guaranteed by the Due Process Clause are notice and a meaningful opportunity to be heard.  *Mancini v. Northampton Cnty.*, 836 F.3d 308, 315 (3d Cir. 2016) (citations omitted).  The City afforded AARC both.

Notice is adequate if "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).  The Supreme Court has repeatedly "condon[ed] notice by mail," *id.* (collecting cases), which is one of the means by which the City notified AARC that the structure at 3527 North Warnock was subject to demolition if the specified defects were not remedied, (October 25, 2019

Notice of Violation). AARC's own member admitted that the notice was sent to the correct mailing address and that he actually received it, (Rodgers Dep. 13:1–4, 64:22–24, 70:18–20, 130:10–23), so AARC's assertion that "the City has not produced any evidence showing that they notified AARC by regular or certified mail," (Resp. in Opp. 9), is incorrect.[5]

AARC was also afforded an opportunity to be heard but never availed itself of that opportunity. The mailed notice informed AARC of its right to appeal and explained how AARC could do so. *See* (October 25, 2019 Notice of Violation.) Since AARC never filed an appeal, *see* (Rodgers Dep. 140:18–23), it cannot now claim a procedural due process violation unless it shows that the appeal process was effectively unavailable or "patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). It has not attempted to make that showing.

And even if AARC had shown a violation of its procedural due process rights, it could not recover against the City because it has not attempted to show that its injuries are attributable to a policy or custom of the City, or a failure or inadequacy by the City.

B

AARC also claims that the City violated its right to substantive due process. (Compl. Count IV.) The substantive component of the Due Process Clause prohibits

---

[5] AARC also argues that the City violated its procedural due process rights because it failed to comply with the notice requirements set out in § A-303.2.1 of the Philadelphia Administrative Code. (Resp. in Opp. 7, 9.) The City disputes the relevance of that provision, but even assuming *arguendo* that the provision governs the City and the City violated it, that still would not constitute a procedural due process violation — courts "determine the level of process due by drawing from federal constitutional law, not from state laws, regulations, or policies." *Steele v. Cicchi*, 855 F.3d 494, 509 (3d Cir. 2017).

executive action[6] that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Kedra v. Schroeter*, 876 F.3d 424 (3d Cir. 2017) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). But the only conscience-shocking behavior AARC points to is the City's allegedly inadequate notice that AARC's property was subject to demolition. (Pl.'s Resp. in Opp. 10). The *procedural* component of the Due Process Clause — not the substantive component — governs the adequacy of notice. *See Mancini*, 836 F.3d at 315; *Win & Son, Inc. v. City of Philadelphia*, 162 F. Supp. 3d 449, 462 (E.D. Pa. 2016). And as explained, the City gave AARC notice sufficient to satisfy the requirements of procedural due process.

In addition, like the procedural due process claim, AARC's substantive due process claim also fails because AARC has not pointed to any policy, custom, failure or inadequacy by the City to which AARC's alleged injuries are attributable.

IV

AARC also asserts Pennsylvania state-law claims of negligence, conversion, and trespass. (Compl. Counts I, II, V, VI.) The City is entitled to summary judgment on each because it is immune under the Pennsylvania Political Subdivision Tort Claims Act. 42 Pa. Con. Stat. §§ 8541–42.

The Tort Claims Act immunizes governmental units like Philadelphia from liability for "any injury to a person or property," with limited exceptions. Pa. Con. Stat. §§ 8541–42, 8501. Excepted from the Act are claims that "sound in negligence" and involve one of the acts enumerated in § 8542(b). *Orange Stones Co. v. City of Reading*,

---

[6] Substantive due process challenges to legislative action, not at issue here, implicate a different set of rules. *See Evans v. Sec'y Pennsylvania Dep't of Corr.*, 645 F.3d 650, 659 (3d Cir. 2011).

87 A.3d 1014, 1022 (Pa. Commw. Ct. 2014). The City's demolition of AARC's property and does not fall into any of the enumerated exceptions.

AARC invokes the "real property" exception in § 8452(b)(3), but that "narrow exception . . . refers only to injuries arising out of the care, custody or control of the real property in the possession of the political subdivision or its employees." *Mascaro v. Youth Study Ctr*, 523 A.2d 1118, 1123 (Pa. 1987). In other words, the exception is limited to claims of *premises liability* — i.e., claims alleging injury caused by the government's failure to keep its property safe for use. *Brewington for Brewington v. City of Philadelphia*, 199 A.3d 348, 358 (Pa. 2018); *Williams v. Phila. Hous. Auth.*, 873 A.2d 81, 86 (Pa. Commw. Ct. 2005).[7] The exception does not apply, as AARC suggests it does, to all negligence claims based on some governmental interaction with real property. Indeed, both Pennsylvania courts and federal courts in this district have repeatedly held the City of Philadelphia immune from suits in which the plaintiff claims, as AARC does, that the City should not have demolished its property. *See, e.g.*, *Erastov v. City of Philadelphia*, No. 638 C.D. 2021, 2022 WL 2898806, at *3 (Pa. Commw. Ct. 2022); *Win & Son*, 162 F. Supp. 3d at 465–66 (E.D. Pa. 2016); *Johnson v. City of Philadelphia*, No. CV 19-1591-KSM, 2020 WL 2933853, at *6 (E.D. Pa. June 3, 2020); *Madar v. City of Philadelphia*, No. CV 19-6033, 2021 WL 2156362, at *13–14 (E.D. Pa. May 27, 2021).[8]

---

[7] The Pennsylvania Supreme Court's decision in *Pivirotto v. City of Pittsburgh*, 528 A.2d 125 (Pa. 1987), which AARC cites, is not to the contrary. As at least one court in this District has pointed out, the municipal actions at issue in *Pivirotto* predated the Tort Claims Act, and the court conducted no immunity analysis. *See Madar*, 2021 WL 2156362, at *10 n.4; *Pivirotto*, 528 A.2d at 248–49.

[8] To the extent one of AARC's negligence claims is based on damage to items that might be characterized as "personal property," *see* Count II, the City is immune notwithstanding the "personal property" exception in § 8542(b)(2). That exception, like the real-property exception, only applies in

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***

Gerald J. Pappert, J.

---

cases where personal property in the City's possession "itself is alleged to have caused the injury." *Sugalski v. Pennsylvania*, 569 A.2d 1017, 1019 (1990).