**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AARC PROPERTIES LLC,<br>*Plaintiff,*<br>v.<br>CITY OF PHILADELPHIA, et al.,<br>*Defendants.* | CIVIL ACTION<br>NO. 22-1436 |

**Pappert, J.** **September 26, 2025**

**MEMORANDUM**

AARC Properties sued the City of Philadelphia, its Department of Licenses and Inspections[1] and Mangual Demolition, Inc., alleging that they wrongfully demolished a damaged residential structure owned by AARC. The City moved for summary judgment on all claims against it, and the Court granted the motion. *AARC Props. LLC v. City of Philadelphia*, No. 22-1436, 2025 WL 1809315, at *1–4 (E.D. Pa. June 30, 2025). AARC Properties now asks the Court to reconsider its decision. After considering AARC's motion, the City's Response and following oral argument, the Court denies the motion.

I

AARC first moves for "reconsideration" under Federal Rule of Civil Procedure 59(e). (Pl.'s Mot. for Recons. at 1, Dkt. No. 54.) Rule 59(e) permits a district court to alter or amend a judgment if the moving party can show one of three things: (1) an

[1] The Department of Licenses and Inspections is not a separate entity from the City, *see* 53 Pa. Stat. and Cons. Stat. Ann. § 16257; *Van v. City of Philadelphia*, No. 24-CV-5014, 2024 WL 4494691, at *6 (E.D. Pa. Oct. 15, 2024), so the Court treated only the City as a party in its Memorandum Opinion. *AARC Props. LLC*, 2025 WL 1809315, at *1 n.1.

intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Fed. R. Civ. P. 59(e); *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *Patel v. United States*, No. 18-14628, 2023 WL 6284728, at *1 (D.N.J. Sept. 27, 2023). A motion to alter or amend "*must* be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e) (emphasis added).

Any Rule 59(e) motion here is untimely. The Court entered judgment for the City of Philadelphia on June 30, 2025. *See* (Mem. Op., Dkt. No. 34); (Order, Dkt. No. 35). And AARC filed its motion to alter or amend *58* days later, on August 27, 2025. *See* (Pl.'s Mot. for Recons., Dkt. No. 54).[2]

II

AARC also relies on Rule 60(b), *see* (Pl.'s Mot. for Recons. at 1), which "allows a party to seek relief from a final judgment" in "a limited set of circumstances," *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). To earn relief from a judgment under Rule 60(b), the moving party must show one of the following: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied; or (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b).

---

[2] At argument, Conor Rodgers, the subject property's owner and a member of AARC, argued that the time for filing the motion should not have commenced until he intervened in the case on July 21, 2025. There is no legal support for this position and, in any event, he filed the motion more than 28 days after July 21. Even if AARC's motion were timely, it fails on the merits. AARC claims it is entitled to relief under Rule 59(e) for the same reasons that it is entitled to relief under Rule 60(b). But, for the reasons stated in Part II of this Memorandum, AARC cannot prevail under Rule 60(b).

AARC seeks relief based on (1) mistake, (2) newly discovered evidence and (3) that the judgment resulted in a manifest injustice pursuant to 60(b)(6). (Pl.'s Mot. for Recons. at 1.)

*Mistake.* AARC suggests the Court made a mistake because it "failed to consider material facts" and "improperly weighed the evidence." (Pl.'s Mot. for Recons. at 2.) AARC also suggests the Court made legal and factual errors. (*Id.* at 1.) Mistake "include[s] errors of law or fact." *Kemp v. United States*, 142 S. Ct. 1856, 1862 (2022) (internal quotation marks and citation omitted). But the Court made no legal or factual errors. For the reasons stated in the Court's Memorandum Opinion, no reasonable juror could find for AARC on any of its claims against the City. *AARC Props. LLC*, 2025 WL 1809315, at *1–4.

*Newly discovered evidence.* AARC next claims newly discovered evidence entitles it to relief from judgment. (Pl.'s Mot. for Recons. at 2.) To constitute newly discovered evidence, the evidence must have been "previously [un]available." *Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 252 (3d Cir. 2010). This means the evidence "could not have been discovered" before judgment "through the exercise of reasonable diligence." *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991). The evidence cannot be merely "cumulative" of evidence already in the record. *Id.*; *see also Brown v. William Penn Sch. Dist.*, No. 18-03674, 2020 WL 4436851, at *3 (E.D. Pa. Aug. 3, 2020) (finding that evidence was "cumulative" when it would "merely reiterate the same" evidence presented at trial). In addition, there must be a probability that the evidence "would have changed the outcome" of the judgment. *Bohus*, 950 F.2d at 930. A party seeking relief from a judgment based on newly discovered evidence "bears a heavy

burden." *Compass Tech., Inc. v. Tseng Lab'ys, Inc.*, 71 F.3d 1125, 1130 (3d Cir. 1995) (internal quotation marks and citation omitted).

What AARC relies on is not "newly discovered evidence" because it either (1) was in the record at the time of judgment, (2) could have been discovered before judgment, or (3) would not have probably changed the outcome of the judgment. AARC makes the following claims:

1. It never received a "final warning" from the Department of Licenses and Inspections that the structure on the property was subject to demolition. (Pl.'s Mot. for Recons. at 2.) AARC suggests the notice was sent to a "James Ragin," not AARC. (*Id.*) But this evidence was in the record at the time of judgment. *See* (Final Warning Unsafe Bldg. at 3–5, Dkt. No. 29).[3] And Rodgers admitted that the notice was sent to the correct mailing address and that he received it. (Conor Rodgers Dep. 13:1–4, 64:22–24, 70:18–20, 130:10–23, Dkt. No. 29.)
2. On January 17, 2020, it received a $27,000 cash offer for the property. (Pl.'s Mot. for Recons. at 2.) But this evidence was in the record at the time of the judgment. *See* (Agreement of Sale at 154–56, Dkt. No. 29) (stating that the Seller agreed to convey to Buyer the subject property (3527 N. Warnock St.) for "twenty-seven thousand dollars"). It is also unclear how this evidence affects the judgment.

---

[3] Docket Number 29 contains the exhibits attached to the City's motion for summary judgment, which means these exhibits were in the record at the time of judgment.

3. Before February 18, 2020, an engineer inspected the property and issued a "full report" with "minimal" concerns. (Pl.'s Mot. for Recons. at 3.) Yet the engineer's report was part of the record at the time of judgment. *See* (James A. Clancy (Engineer Rep.) at 89, Dkt. No. 29).
4. On March 6, 2020, Governor Tom Wolf declared that Pennsylvania was in a "disaster emergency." (Pl.'s Mot. for Recons. at 3.) This evidence was also in the record at the time of judgment. *See* (Conor Rodgers Dep. 117:17–21) ("I know that I tried to go down the week of . . . you know, the beginning of March. Tom Wolf declared [] a state of emergency in Pennsylvania, and all government buildings were closed as of March 6th.") And again, it is unclear how this evidence affects the judgment.
5. On March 9, 2020, Rodgers tried to visit the Municipal Services Building but could not access it—presumably because it was closed. (Pl.'s Mot. for Recons. at 3.) But this evidence was in the record at the time of judgment as well. *See* (Conor Rodgers Dep. 117:22–24, 118:1–2) ("To obtain a Make Safe Permit in Philadelphia, you need to physically go down into the L&I office to get this approved. I was unable to do so because of the state of emergency that was declared.")
6. To get a "make safe permit," an individual must apply for the permit "in person." (Pl.'s Mot. for Recons. at 3.) This too was part of the record evidence at the time of judgment. *See, e.g.*, (Conor Rodgers

Dep. 117:22–24) ("To obtain a Make Safe Permit in Philadelphia, you need to physically go down into the L&I office to get this approved.").

7. On March 10, 2020, the Department of Licenses and Inspections generated an "Initial Notice of Violation & Order." (Pl.'s Mot. for Recons. at 3.) Rodgers says this notice "sat on a desk in the Office of Licenses and Inspections" for two days, suggesting he did not promptly receive it. (*Id.*) The City seems to concede that this was not in the record at the time of judgment. (Def.'s Resp. in Opp'n to Pl.'s Mot. for Recons. at 9, Dkt. No. 56.) Yet AARC offers no explanation why this evidence could not have been discovered earlier. And it is immaterial. The Order says, "Front Door Open to Trespass." (Pl.'s Mot. for Recons. Ex. E at 48.) It says the "structure is open to trespass and must be sealed." (*Id.*) As the City explains, this was not relevant to "the impending demolition," so it wouldn't have probably changed the outcome of the motion. (Def.'s Resp. in Opp'n to Pl.'s Mot. for Recons. at 11.)

8. On March 12, 2020, the "Contractual Services Unit" inspected the property and noted that "No work done to make repairs to the property." (Pl.'s Mot. for Recons. at 3.) Yet, again, this evidence was in the record at the time of judgment. *See* (Dep't of Licenses & Inspections at 14, Dkt. No. 29) ("No work done to make repairs to [] property.").

9. On March 12, 2020, "Mangual Demolition Company was awarded the winning bid" for the property. (Pl.'s Mot. for Recons. at 3.) This was also part of the record at the time of judgment. *See* (Notice of Curbside Bid at 26, Dkt. No. 29).

10. On March 12, 2020, the "Licenses & Inspections approved a building permit which referenced" the property at issue but had "incorrect owner information" on it. (Pl.'s Mot. for Recons. at 3.) Again, this evidence was in the record at the time of judgment. *See* (Bldg. Permit at 25, Dkt. No. 29) (listing "Miracle Temple Holiness" as the "owner," which is the same thing AARC alleges in its motion for reconsideration).

11. On March 12, 2020, "Mark Soltys from Licenses & Inspections" gave "letters to all of the neighbors" of the project stating that it was going to be demolished. (Pl.'s Mot. for Recons. at 4.) Rodgers claims the City was "masterful and strategic in its design to keep" it "in the dark." (*Id.*) Yet AARC had notice of the demolition, *see* (Conor Rodgers Dep. 13:1–4, 64:22–24, 70:18–20, 130:10–23), so this is immaterial.

12. On March 13, 2020, "Mangual Demolition Company Commence[d] the demolition" of the property. (Pl.'s Mot. for Recons. at 4.) Yet this information was in the record at the time of judgment; it was the whole point of the lawsuit.

*Manifest injustice*. In addition to arguing mistake and newly discovered evidence, AARC also claims it is entitled to relief because the judgment resulted in a "manifest injustice." *See* Fed. R. Civ. P. 60(b)(6) (allowing a court to grant relief from judgment for "any" "reason" not enumerated in Rule 60(b) "that justifies relief"). Relief under Rule 60(b)(6)'s "catch-all provision" is appropriate only in "extraordinary circumstances." *Norris v. Brooks*, 794 F.3d 401, 404 (3d Cir. 2015) (internal quotation marks and citation omitted). AARC presents no extraordinary circumstances that might entitle it to relief. Nearly all of Mr. Rodgers's arguments reflect mere disagreement with the Court's ruling.

*Inadequate representation*. AARC suggests its counsel "inadequately represented" AARC and "misrepresented some of the key facts and materials that came in discovery." (Pl.'s Mot. for Recons. at 2.) In *Daniel v. T&M Protection Resources, LLC*, 844 F. App'x 433 (2d Cir. 2021) (order), the Second Circuit articulated, albeit in a non-published opinion, a standard to evaluate such an argument. There, the plaintiff sued his employer under Title VII, and the district court entered judgment for the employer. The plaintiff sought relief from the judgment under Rule 60, arguing, in part, that his attorneys "ignored [] evidence and failed to adequately represent him." *Id.* at 436. Borrowing from habeas case law, the Second Circuit stated that, to "show entitlement to Rule 60(b) relief based on the inadequate performance of a litigant's counsel, the litigant must show that his lawyer abandoned the case and prevented [him] from being heard." *Id.* at 436 (alteration in original) (internal quotation marks and citation omitted).

Although AARC "may be dissatisfied with how [the] case was handled and with the judgment that was obtained," it "has not shown that [its] lawyers physically or constructively abandoned" it. *Id.*; *see also Moje v. Fed. Hockey League, LLC*, 792 F.3d 756, 759 (7th Cir. 2015) ("Abandoned clients who take reasonable steps to protect themselves can expect to have judgments reopened under Rule 60(b)(1) . . . .").

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***

Gerald J. Pappert, J.